[Civ. No. 29988.   Second Dist., Div. Two.   Sept. 20, 1966.]

RULON L. JOHNSON, Plaintiff and Appellant, v. JUNE ELIZABETH JOHNSON, Defendant and Respondent.

R. Norman Wenzell for Plaintiff and Appellant.

Russell & Schureman and Robert W. Hancock for Defendant and Respondent.

ROTH, P. J.—Appellant Rulon Johnson appeals from an order of the superior court dismissing his complaint for divorce for lack of jurisdiction. The order was predicated on a motion by June Elizabeth Johnson, his wife, respondent, on the ground that Rulon is not a California resident within the meaning of Civil Code, section 128. A prior motion by June to strike the complaint on the ground that California was not a convenient forum was denied without prejudice.

The motion to dismiss for lack of jurisdiction was heard and the ruling of the court was based on affidavits. June's affidavit in support of her motion to dismiss consists entirely of declarations concerning *her* residence and domicile within the State of Alabama. Her affidavit in support of the prior motion to strike is similar, although it contains a few enlightening declarations with respect to Rulon's domicile which we will consider as if made in direct support of the motion to dismiss. Civil Code, section 128 states in part: "A divorce must not be granted unless the *plaintiff* has been a resident of the state one year. . . ." (Italics added.) Section 129 states: "In actions for divorce neither the domicile nor residence of the husband shall be deemed to be the domicile or residence of the wife. For the purpose of such action each may have a separate domicile or residence depending upon proof of the fact and not upon legal presumptions." It is clear from these sections that the domicile of June is not germane to the issue of jurisdiction. It is appellant Rulon's domicile with which we are concerned.[1]

The facts as they appear from all affidavits are not in conflict.

June has taken the position that since residence (and domicile) are questions of fact, this court should not disturb the ruling of the trial court if there is any conflict in the affidavits, and there is substantial direct evidence or any reasonable inference from the facts which will support the finding of the court. (*Lundblade* v. *Phoenix,* 213 Cal.App.2d 108, 110-111 [28 Cal.Rptr. 660].) The question, therefore, is whether the evidence submitted or a reasonable inference therefrom supports a finding that Rulon is not a resident of California within the meaning of section 128.

The relevant and uncontradicted facts are as follows:

Appellant was born in Idaho, grew up in Salt Lake City,

---

[1] We treat only appellant's right to file an action in California for the termination of his marital status. We do not adjudicate property or custodial rights.

Utah, and entered the United States Air Force. He was stationed in California more than 20 years ago, and has continuously maintained a permanent address in this state.

In 1957 he was transferred to Maxwell Air Force Base in Alabama, and remained there until the middle of 1965 when he was transferred to Clark Air Force Base in the Philippines.

He married June, a native Alabamian, in Alabama. They have a son, born in Alabama. June did not wish to reside on the Air Force Base and Rulon purchased a home in Alabama. Rulon at no time intended that the home property would be held indefinitely, and asserts that it is quite common for Air Force officers with families to purchase homes near the base, even though they know they may be transferred at any time. Rulon avers further that the purchase he made was not with the intention of making Alabama the permanent home of the parties.[2]

Rulon avers further that he never intended to be a resident of Alabama. He is registered as a voter in Los Angeles County. For the last 20 years, and as recently as October of 1964 he has actually voted in California.

For many years he has maintained a permanent address in Los Angeles. The Los Angeles address, 1119 No. Clark Street, is used on a joint income tax form for himself and June. His Air Force records as certified by an officer of the Alabama base indicate the same address.

He has paid California income taxes for the years 1963 and 1964 and the California returns (joint) show the same Clark Street address for himself and June. He paid *nonresident* taxes in Alabama. The joint returns referred to also contain the statement "Please communicate at military address 1823 Robinson Hill Rd., Montgomery, Alabama."

With respect to his intended domicile, Rulon avers: "It is true that the parties were married at Montgomery, Alabama, and that their minor child was born in the State of Alabama. However, this was not due to any intention of Affiant to remain in Alabama nor to make the State of Alabama his residence or domicile. Affiant has been and now is temporarily stationed in the State of Alabama only because he is a member of the United States Air Force, and he has no choice of nor

---

[2]The common practice with respect to the purchase of homes by Air Force personnel was established by the affidavit of Arnold Blackwell, a real estate broker in Montgomery, Alabama, who has had experience in dealing with Air Force families.

control over his whereabouts from time to time and is constantly subject to orders of the United States Air Force for transfer to any location in the world. As a matter of fact, commencing in August or September, 1965, Affiant will no longer be stationed in the State of Alabama but will be transferred for duty to Clark Air Force Base, Philippines.''

The word ''residence'' as used in Civil Code, section 128 means ''domicile'' (*Ungemach* v. *Ungemach*, 61 Cal.App. 2d 29, 36 [142 P.2d 99]). This difference is significant. In *Smith* v. *Smith*, 45 Cal.2d 235, the court states at p. 239 [288 P.2d 497]:

''Courts and legal writers usually distinguish 'domicile' and 'residence', so that 'domicile' is the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning, but which the law may also assign to him constructively; whereas 'residence' connotes any factual place of abode of some permanency, more than a mere temporary sojourn. 'Domicile' normally is the more comprehensive term, in that it includes both the *act* of residence and an *intention* to remain; a person may have only one domicile at a given time, but he may have more than one physical residence separate from his domicile, and at the same time. (28 C.J.S. 'Domicile,' § 1, p. 1 et seq.; 16 Cal.Jur.2d 'Domicile' §§ 2-3, pp. 647-649.)''

Since the law is clear that both the act of residence and the intention to remain must unite before domicile is established, we must examine the facts at bench to determine whether any inference may legally be drawn which supports a finding that one or both of these elements is absent.

Turning first to the intent requirement, it is uncontradicted that Rulon has registered in California over the past 20 years, and in fact has exercised his voting right in California within the recent past. ''Voting registration is '[o]ne of the important acts to be considered' in determining residence [domicile] (*Ballf* v. *Public Welfare Dept.* (1957) 151 Cal.App.2d 784, 788 [312 P.2d 360].'' (*Cothran* v. *Town Council of Los Gatos,* 209 Cal.App.2d 647, 663 [26 Cal.Rptr. 319].) In addition, Rulon has paid California taxes in recent years and has made income tax returns as a resident of the State of California, and filed nonresident tax returns in Alabama. He has also at all times recorded his permanent address with the Air Force as being in Los Angeles. While it

is true that appellant purchased a home near the Air Force Base, that act is adequately explained by uncontradicted evidence which reveals no inconsistency with the requisite intention to make California his permanent home. Nothing in the affidavits of either party even suggests that Rulon had any other intent. "A legal inference can be drawn only from the facts proved. It must be reasonably and logically drawn and it may not be based only on imagination, speculation, supposition, surmise, conjecture or guess work. [Citations.]" (*Cothran* v. *Town Council of Los Gatos, supra,* at p. 664.)

All of Rulon's actions while in Alabama manifest an intention to make California his domicile. In view of the evidence, it would be improper to imply that Rulon's purchase of a home showed an intention to abandon his former domicile. Such an inference not only contradicts the other facts recited, but would unduly restrict a person's conduct in a foreign state or country during periods of enforced absence. ■ The suggested inference, too, would violate the well-established rule that where a change of residence (in the formal sense) is occasioned by the exercise of duties in the armed services, only clear and unambiguous evidence of an intention to abandon the old domicile and adopt a new one will be adequate to prove that change. (*Rhodes* v. *Rhodes,* 80 Cal.App.2d 723, 725-726 [182 P.2d 275].)

June relies on the case of *Aldabe* v. *Aldabe,* 209 Cal.App.2d 453 [26 Cal.Rptr. 208]. In that case, a husband and wife owned a ranch which crossed the California-Nevada border. The house and other structures were situated on the California side, but the parties had voted, shopped, registered their automobile, banked and received their mail on the Nevada side. They had lived in the home for 17 years with full knowledge that it was in California. When the husband obtained an ex parte Nevada divorce, the wife challenged that proceeding in California, claiming that the husband was not domiciled in Nevada and therefore the Nevada court had no jurisdiction. The California District Court of Appeal agreed, stating at p. 466 :

"It is stated by Professor Beale (1 Beale, Conflict of Laws, pp. 149, 150) : 'It is not enough that a man desires to acquire or keep a "legal residence" or "legal domicil;" the intention necessary for the acquisition of a domicil is an intention as to the fact, not as to the legal consequences of the fact. "A man's home is where he makes it, not where he would like to have it." . . .

" 'One cannot have his only home in one place and a domicil in another, as he may have a mere residence in one place and a domicil elsewhere. A place which is a man's home must be his domicil (except where he has in fact more than one home). The intention requisite to acquire a domicil is the intention to have a home, and that is the only legally relevant intention; the domicil follows as a legal consequence, without regard to whether the consequence is desired or not. . . .'

"Under these rules the Aldabes were domiciled in California, notwithstanding where they wished to live. . . .

"The evidence which was introduced, both in the Nevada and California actions, with reference to the parties' declarations of intent, their banking, shopping, voting and car registrations were, therefore, merely evidence of a desire to enjoy some of the benefits of Nevada residence, evidence which, because it collided with the fact that they made their only home in California and intended to do so, became legally irrelevant.''

Basing her argument on this case, June points out that Rulon lived in Alabama for nine years and made and intended to make his home there; therefore, he cannot now claim to be a domiciliary of California. This argument, however, ignores not alone the uncontradicted facts herein recited, but also the irrefutable fact that Rulon was not in Alabama by choice, but on the orders of his military superiors. A change of residence required as an incident to military service will not bring about a change of domicile in the absence of a clear showing of intent. (*Rhodes* v. *Rhodes, supra,* at pp. 724, 725; see also *Murphy* v. *Travelers Ins. Co.,* 92 Cal.App.2d 582, 586-587 [207 P.2d 595].)

In *Aldabe,* the husband by choice had made his actual residence in California for 17 years. In the case at bench, Rulon resided in Alabama because he was ordered to. At the time of the commencement of this action, Rulon was preparing to leave Alabama presumably on a permanent basis in response to an order of superior military authority stationing him in the Philippines.

The rule minimizing the weight to be given to the residence of one in military service in determining domicile is a salutary one. One should be entitled to the benefits of a permanent home in a given state even though his physical residence varies from time to time because of the exigencies of military service.

▮ It is argued that California has no particular interest

in the marital relationship at bench. Rulon and June were married and separated in Alabama, their minor child was born there and remains there, their marital property is in that state, and June is a native Alabamian with no desire to leave. There is merit to this contention. Nevertheless, while it has been suggested by some authorities that interest in the marital status ought to be a condition precedent to an assumption of jurisdiction by a court in the *absence* of domicile (see Traynor, J., concurring opinion in *Scott* v. *Scott*, 51 Cal.2d 249, 254-255 [331 P.2d 641]), we have not found and are not cited to any authorities which hold that domicile alone, in the *absence* of any substantial *interest* in the marital relationship, will not support the assumption of jurisdiction for the purpose of hearing a divorce action. Such a ruling is, in our opinion, directly contrary to the California statute (Civ. Code, § 128) and the United States Constitution. (*Simons* v. *Miami Beach First Nat. Bank*, 381 U.S. 81 [85 S.Ct. 1315, 14 L.Ed.2d 232] ; *Williams* v. *North Carolina*, 325 U.S. 226, 229-230 [65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366].)

On the uncontradicted facts before us, and for the reasons stated, we hold that the trial court did have jurisdiction to proceed with the action.

It has been held that even though a court has jurisdiction to hear a divorce action, it may refuse to assume that jurisdiction on the grounds of *forum non conveniens* (see 1 Witkin, Cal. Procedure (1954) p. 441, et seq.).

It appears from the record that June's prior motion bottomed on this ground, was denied without prejudice. In any event, that issue is not before this court, and we express no opinion with respect thereto.

The order dismissing appellant's complaint for lack of jurisdiction is reversed.

Herndon, J., and Fleming, J., concurred.